304

MUSKINGUM COAL CO., Plaintiff-Appellee, v. EASTERN HOCKING COAL CO. et, Defendants-Appellants.

Ohio Appeals, Second District, Franklin County.

No. 4910. Decided December 9, 1953.

Porter, Stanley, Treffinger & Platt, Lawrence D. Stanley, Edmund D. Doyle, of Counsel, Columbus, for plaintiff-appellee.

Hon. Carrington T. Marshall, Hon. Robert P. Duncan, Columbus, for defendants-appellants.

## OPINION

By WISEMAN, PJ.

This is an appeal on questions of law and fact from the Common Pleas Court of Franklin County in an action for specific performance in which the trial court entered a decree requiring defendants-appellants to convey land to plaintiff-appellee pursuant to the terms of a contract.

By stipulation of counsel the matter was presented to this Court on the record taken below, together with depositions of several witnesses taken in this Court.

On motion in the court below Runkle anl Marshall were

made parties defendant as successors in interest to The Eastern Hocking Coal Company.

On March 20, 1944 the Muskingum Coal Company and The Eastern Hocking Coal Company entered into a written agreement whereby The Eastern Hocking Coal Company agreed to sell and The Muskingum Coal Company agreed to purchase coal mining rights in a large tract of land located in Perry and Morgan Counties, Ohio, at an agreed price per acre. Attached to the agreement and made a part thereof were two schedules specifically describing the lands, involving 69 separate parcels, comprising 5,478.24 acres. The price was to be paid in seven equal annual installments of $31,773.79. the first installment to be paid upon the execution of the deed. and the succeeding installments to be paid on the first business day of April in 1945 through 1950. The deed was to be placed in escrow and to be delivered to the purchaser upon the payment of the entire purchase price The last installment of the purchase price was paid in April, 1950, and the deed delivered as agreed.

The controversy arises by virtue of a certain provision in the written agreement of March 20, 1944, which provides as follows:

"8. It is further agreed that if any other acreage is found to be owned by first party in any of the sections included in Schedule A of Perry County and Schedule B of Morgan County, first party desires to sell and second party agrees to purchase. the same and said acreage shall be added hereto and paid for at the rate of Forty Dollars ($40) per acre, payable in installments as aforesaid."

One of the parcels specifically described and conveyed was located in Section 14. Bearfield Township, Perry County. The evidence shows that The Eastern Hocking Coal Company owned 138.55 acres of other land in said Section 14 which was not specifically described and not conveyed. Plaintiff claims that under the terms of the contract the defendants agreed to sell and plaintiff agreed to buy the 138.55 acre tract on the terms stated in the contract. Upon defendants' refusal to convey this action was brought.

The determinative issues are raised by defendants' answer wherein they allege that said 138.55 acre tract was not specifically described in the contract and that the defendants never intended that said tract should be included in the contract; that the contract dated March 20. 1944 by its terms continued in force until about April 1, 1950, at which time plaintiff agreed to pay the final installment of the purchase price and the defendants agreed to deliver the deed, which was in fact consummated, and that thereupon all rights of the parties

under the contract terminated. Defendants further allege that pursuant to paragraph 8 of the written agreement the plaintiff, upon discovering that The Eastern Hocking Coal Company owned 160 acres in Section 13 which had not been included, and upon demand of the plaintiff, the defendants, on October 4, 1944, conveyed said 160 acres to the plaintiff on the same terms and conditions relative to price and installment payment as provided in the written agreement; that thereupon the written agreement became fully executed. The defendants also plead laches. By amendment in this Court the defendants plead as an additional defense that any acreage which would be the subject matter of future sales would only be such acreage as would be later found to be owned by the defendants; that the 138.55 acres described in the petition were not later found, but were known to be owned by the defendants on March 20, 1944, and defendants' agents and officers at that time and during the previous negotiations leading up to the execution of the said contract definitely informed plaintiff's agent and officers that said 138.55 acres were not then for sale and that the same would not at any future time be for sale. As we view it, this later defense raises the principal and determinative issue.

The written agreement dated March 20, 1944, involved the transfer of many different parcels of land located in many sections, in different townships, and in two different counties. Because of the difficulty of ascertainment of specific descriptions of the numerous tracts, paragraph 8 was inserted, which was intended to operate to bind the parties as to other lands if any were later found to be owned by the defendants which during the negotiations were not known to be owned by defendants, and which were located in sections in which land had been conveyed. The words which require interpretation are: "if any other acreage is found to be owned." Manifestly, this provision refers to any acreage which through error had been overlooked or had been forgotten to be included by specific description. Giving this provision a reasonable and practical interpretation, it could not refer to acreage which was known to be owned by the defendants at the time and which was definitely excluded. On the trial of the case in the court below, the trial judge ruled out evidence sought to be introduced by the defendants to the effect that in the negotiations leading up to the signing of the written agreement dated March 20, 1944, the attorney for the plaintiff was informed that the disputed tract of 138.55 acres was not to be included and not to be conveyed; that defendants did not desire to sell said tract. In the depositions taken in this Court, similar testimony was presented by the defendants. The plaintiff

made no effort to refute this testimony. The attorney for the plaintiff was not called as a witness. The court below ruled that the admission of this evidence would violate the parol evidence rule. We do not think so. This evidence does not tend to vary or contradict the terms of the written contract. Its admission does not do violence to the parol evidence rule. It assists the court to identify the subject matter to which the written agreement applied. Certainly, if the parties knew of defendants' ownership of the 138.55 acres and plaintiff was informed that defendants did not desire to sell and that the tract was deliberately excluded, it could not be said that such acreage was later "found to be owned" by the defendants.

The record shows that in the trial below the plaintiff produced its chief engineer, who testified that before the signing of the written agreement, he, on behalf of the plaintiff, had made an examination of the records of the lands owned by the defendants and knew that defendants owned the disputed acreage, and had made a map in conformity to such records. There is much credible evidence in the record supporting the contention that plaintiff knew, on March 20, 1944, that defendants owned the land and did not intend to sell it. The conduct of the parties, especially the conduct of the plaintiff, subsequent to the execution of the written agreement, confirms this conclusion.

The contract did not describe, and by the very nature of the provision under construction, it could not describe the omitted lands. The plaintiff was required to resort to the introduction of extrinsic evidence to show what lands had later been found to be owned by defendants and covered by the contract; likewise, the defendants could, by the introduction of extrinsic evidence, show what lands were then known and not later found to be owned, and not intended to be covered by the contract.

In support of the ruling of this Court that such evidence is admissible we cite **Vol. 17, O. Jur., page 541, Section 444,** the text of which is as follows:

"Extrinsic parol evidence is always admissible to give effect to a written instrument by applying it to its proper subject-matter, by proving the circumstances under which it was made, thereby enabling the court to put itself in the place of the parties, with all the information possessed by them, the better to understand the terms employed in the contract, and to arrive at their intention. Parol evidence is competent for the purpose of identifying and applying the terms of a written contract * * * to the

subject-matter of the contract, and for pointing out particular property then being sold." (Numerous cases cited.)

In Vol. 32 C. J. S., page 891, part of Section 959 reads as follows:

"The parol evidence rule does not preclude the admission of parol or extrinsic evidence for the purpose of aiding in the interpretation or construction of a written instrument, where the language of the instrument itself, taken alone, is such that it does not clearly express the intention of the parties or the subject of the agreement. Such evidence is admitted not to add to or detract from the writing, but merely to ascertain what the meaning of the parties is, and the admission of such evidence is subject to the limitation that it must be consistent with the writing. Thus a written instrument is open to explanation by parol or extrinsic evidence when it is expressed in short and incomplete terms, or is fairly susceptible of more than one construction, or where the language employed is vague, uncertain, obscure, or ambiguous, and where the words of the contract must be applied to facts ascertainable only by extrinsic evidence a resort to such evidence is necessarily permitted. So also, if there is doubt and uncertainty, not about what the substance of the contract is but as to its peculiar application, it may be explained and properly directed."

In Vol. 32, C. J. S., page 911, a part of Section 960 is as follows:

"Parol evidence is admissible to show the situation of the parties and the circumstances under which a written instrument was executed, for the purpose of ascertaining the intentions of the parties and properly construing the writing. In other words, the court may, by receiving evidence of the circumstances under which the writing was made, place itself in the situation of the parties who made it, and to that extent look in on their minds and so judge of the meaning of the words, and of the correct application of the language to the thing described, from the point of view of the parties who wrote or executed the instrument."

In **Hildebrand v. Fogle, 20 Ohio, page 147,** the second paragraph of the syllabus is as follows:

"Extrinsic parol evidence is always admissible to give effect to a written instrument by applying it to its proper subject matter, by proving the circumstances under which it was made, thereby enabling the court to put themselves in the place of the parties, with all the information possessed by them, the better to understand the terms employed in the contract, and to arrive at the intention of the parties."

In **Procter & Gamble v. S. L. Snodgrass, Admr.,** 5 C. C. 547, affirmed without opinion in 53 **Oh St** 644, the fifth paragraph of the syllabus reads as follows:

"Where the meaning of a contract is doubtful, the conduct of the parties thereto with reference to it, throws great light upon their intention in making it, and the interpretation which should be given to it. The fact that if this contract is to have the interpretation claimed by plaintiff, he would not have been entitled to any payment thereon until the completion of the work, and that payments were regularly made during its progress; and the further fact that during the time plaintiff was so engaged, the defendants, apparently without objection, greatly lowered the amount to be paid for his services, go far to show that it was not the intention of the parties to the contract to stipulate that it should continue until all of the buildings and improvements were completed."

In **The Norfolk & Chesapeake Coal Co. v. John, 18 Oh Ap,** at **page 512** the second paragraph of the syllabus is as follows:

"The parties to an action for breach of a written contract, which they had entered into for the sale of coal, not agreeing as to what the term of the contract 'at the mines' really meant, one contending it meant two specific mines and the other that it meant any mines in eastern Kentucky, parol evidence is admissible to ascertain the true intent of the parties "

In **Watson v. Lamb, 75 Oh St, 481,** the syllabus is as follows:

"In an action to recover damages for alleged failure of the vendor to deliver hogs according to the terms of a written contract in which the subject of the sale is designated as 'my hogs,' the plaintiff may introduce parol evidence to show that the defendant did not deliver all of his hogs, but not for the purpose of changing the terms of the written contract into which the parties entered."

On pages 491 and 492 Judge Shauck said:

"Parol evidence was not competent to vary the terms of the contract, although it was competent to apply the terms of the contract to its subject."

See **Bank v. Cole, 83 Oh St 50** at **page 59. Miller v. Woolley, 87 Oh Ap** 447 is distinguishable on the facts.

In our opinion extrinsic evidence to show that the lands in dispute were known and were excluded would be just as admissible as extrinsic evidence to show that the disputed lands were not known and therefore included.

We conclude from all the evidence that the parties had definite knowledge at the time the written agreement was executed that the defendants owned the disputed acreage, that the defendants did not intend to include said lands in the

contract and that therefore the plaintiff is not entitled to specific performance.

We do not deem it necessary to state all the various contentions made by counsel, or review in detail all the evidence presented. To do so would serve no useful purpose.

The prayer of plaintiff for specific performance is denied. An entry may be drawn in conformity herewith.

MILLER and HORNBECK, JJ, concur.